UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 2:20-CR-00088-1-JRG-CRW |
| | ) | |
| ISAIAH LEVON ASHFORD | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Isaiah Levon Ashford's Motion for Sentence Reduction under Guideline Amendment 821, Part B [Doc. 54], the United States's Response [Doc. 57], and Mr. Ashford's Reply [Doc. 58]. For the reasons herein, the Court will deny Mr. Ashford's motion.

### I. BACKGROUND

In 2018, law-enforcement officers initiated a traffic stop of a vehicle in which Mr. Ashford was a passenger and asked the vehicle's driver—for whom the officers had obtained a federal arrest warrant on drug charges—if he had drugs in the vehicle. [Plea Agreement, Doc. 26, at 2–4]. The driver responded, "You know I do," and he gave the officers consent to search the vehicle. [*Id.* at 4]. The officers searched the vehicle and seized a vacuum-sealed package containing powders, pills, and another substance that they believed to be drugs. [*Id.*]. The Tennessee Bureau of Investigation analyzed the package's contents and determined that they contained 89.99 grams of a mixture or substance consisting of heroin and fentanyl, 372.78 grams of a mixture or substance containing cocaine base, 315 oxycodone pills, and 10.85 grams of marijuana. [*Id.*]. The TBI also identified Mr. Ashford's fingerprints on the package. [*Id.*].

A federal grand jury went on to charge Mr. Ashford with multiple offenses under the Controlled Substances Act, 21 U.S.C. § 801 *et seq*. [Indictment, Doc. 3, at 1]. He later pleaded guilty to possessing with the intent to distribute 280 grams or more of a mixture or substance containing cocaine base (crack), in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). [Plea Agreement at 1]. At sentencing, his total offense level was twenty-five and his criminal history category was I, [Statement of Reasons, Doc. 50, at 1], and his advisory guidelines range was fifty-seven to seventy-one months' imprisonment, [*id.*].

In tallying Mr. Ashford's criminal history score, the United States Probation Office, under USSG § 4A1.1, assigned a single criminal history point to Mr. Ashford for obtaining a conviction in Michigan for driving with a suspended license. [PSR, Doc. 31, ¶ 35]. According to the PSR, that conviction resulted in a sentence of forty-five days of imprisonment and twelve months of probation. [*Id.*]. Under § 4A1.1, a defendant receives three points "for each prior sentence of imprisonment exceeding one year and one month," two points "for each prior sentence of imprisonment of at least sixty days," and one point for any other prior sentence. USSG § 4A1.1(a)–(c). Without the single criminal history point for driving with a suspended license, Mr. Ashford would have received zero criminal history points.

Under the Sentencing Guidelines, specifically USSG § 4A1.2(c)(1), a prior offense of driving with a suspended license counts towards a defendant's criminal history score only if it resulted in a term of imprisonment of at least thirty days or a term of probation greater than a year. USSG § 4A1.2(c)(1). Prior to sentencing, Mr. Ashford's attorney, under § 4A1.2(c)(1), objected to the Probation Office's assignment of the criminal history point for Mr. Ashford's conviction for driving with a suspended license:

> It is Mr. Ashford's belief, that he was not sentenced to 45 days of incarceration. He is attempting to retrieve the court records for verification. The records will speak

2

Case 2:20-cr-00088-JRG-CRW    Document 59    Filed 03/20/25    Page 2 of 16    PageID #: 361

for themselves. Unless he was in fact sentenced to at least 30 days of incarceration
or over 1 year of probation, it is Mr. Ashford's contention, that the criminal history
point would be excluded pursuant to § 4A1.2 (c)(1).

[Def.'s Objs., Doc. 32, at 2]. The Probation Office responded to Mr. Ashford's objection by stating:

> After the preparation of the presentence investigation report, this officer was able
> to reach a contact in the Michigan courts, and the clerk noted the records show 45
> days credit. However, she could not determine if this was in fact credit for 'time
> served,' or it was suspended in lieu of some other penalty, i.e., fines or community
> service.

[PSR Addendum, Doc. 46, at 1].

At Mr. Ashford's sentence hearing, the Court did not rule on the objection because it did not affect his guidelines range, and Mr. Ashford's attorney agreed that a ruling was unnecessary:

> The Court: Mr. Payne, there is a second objection to the one criminal history point
> assessed here. It does not—well, it would not in fact impact the advisory range at
> all. Is there any reason why you want me to take that up?
>
> Mr. Payne: No, Your Honor, there isn't.
>
> The Court: Okay. Then because it does not impact the advisory guidelines range
> and because the court will not consider that paragraph of the presentence report in
> determining an appropriate sentence, then the Court will not decide that objection.

[Sent'g Hr'g Tr., Doc. 51, at 4:21–25; 5:1–5]. The Court sentenced Mr. Ashford to a guidelines-range sentence of sixty months' imprisonment. [J., Doc. 49, at 2].

Now, through the Federal Defenders Services of Eastern Tennessee ("FDSET"), Mr. Ashford moves the Court to reduce his sentence under 18 U.S.C. § 3582(c)(2) and Amendment 821 to Appendix C of the *United States Sentencing Commission Guidelines Manual*. The United States opposes his motion. Having carefully reviewed the parties' arguments, the Court is now prepared to rule on Mr. Ashford's motion.

3

## II. LEGAL STANDARD

"Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed,' but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011) (internal quotation omitted). Congress enacted one of those exceptions in 18 U.S.C. § 3582(c)(2), which states:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

In short, a defendant will be eligible for a reduction under § 3582(c)(2) if he satisfies two requirements. *See United States v. McClain*, 691 F.3d 774, 777 (6th Cir. 2012) (stating that the defendant "must show" that he is entitled to a sentence reduction under § 3582(c)(2)).

First, the defendant must have "been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." *United States v. Taylor*, 815 F.3d 248, 250 (6th Cir. 2016) (quoting 18 U.S.C. § 3582(c)(2));[1] *see* U.S. Sent'g Guidelines Manual § 1B1.10(a)(1) cmt. n.1(A) ("Eligibility for consideration under 18 U.S.C. § 3582(c)(2) is triggered only by an amendment . . . that lowers the applicable guideline range[.]").[2] In determining whether a defendant was sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission," 18 U.S.C. § 3582(c)(2), the

---

[1] This is so because Congress has "charge[ed] the Commission both with deciding whether to amend the Guidelines and with determining whether and to what extent an amendment will be retroactive." *Dillon v. United States*, 560 U.S. 817, 826–27 (2010) (footnote committed) (citing 28 U.S.C. § 994(o), (u))).

[2] "[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *United States v. Douglas*, 634 F.3d 852, 862 (6th Cir. 2011) (alteration in original) (footnote omitted) (quoting *Stinson v. United States*, 508 U.S. 36, 38 (1993))).

4

Court identifies the amended guidelines range—that is, the guidelines range that would have applied to the defendant if the applicable amendment had been in effect during sentencing—and substitutes this guidelines range for the original guidelines range. *Dillon v. United States*, 560 U.S. 817, 827 (2010); U.S. Sent'g Guidelines Manual § 1B1.10(b)(1).

Second, a reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." *Taylor*, 815 F.3d at 250 (quoting 18 U.S.C. § 3582(c)(2)). USSG § 1B1.10 contains the Sentencing Commission's policy statements. *See* U.S. Sent'g Guidelines Manual § 1B1.10(a)(1) (providing that a reduction "shall be consistent with this policy statement"). A reduction is consistent with USSG § 1B1.10 when the amendment at issue (1) applies to the defendant and (2) lowers the defendant's guidelines range. *Id.* § 1B1.10(a)(2)(A)–(B).

Lastly, the Court must consider any applicable factors under 18 U.S.C. § 3553(a), as well as public-safety factors, when determining—in its discretion—whether a reduction "is warranted in whole or in part under the particular circumstances of the case." *Dillon*, 560 U.S. at 827; *see United States v. Curry*, 606 F.3d 323, 330 (6th Cir. 2010) ("[T]he district court *may* reduce a previously imposed sentence if [the] statutory requirements . . . are met. Section 3582 does not create a *right* to a reduced sentence, however." (citing U.S. Sent'g Guidelines Manual § 1B1.10 cmt. background)); U.S. Sent'g Guidelines Manual § 1B1.10 cmt. n.1(B)(i) (stating that courts "shall consider the factors set forth in 18 U.S.C. § 3553(a)"); U.S. Sent'g Guidelines Manual § 1B1.10 cmt. n.1(B)(ii)–(iii) (providing that courts "shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment" and "may consider post-sentencing conduct of the defendant").

5

### III. ANALYSIS

In 2023, the Sentencing Commission submitted to Congress a multi-part amendment to the guidelines's criminal history rules: Amendment 821 in Appendix C to the *Guidelines Manual*. The Sentencing Commission gave retroactive effect to two parts of that amendment: Part A and Part B, Subpart 1. *See* U.S. Sent'g Guidelines Manual § 1B1.10(d); U.S. Sent'g Guidelines Suppl. to app. C, amend. 825. In Part B, Subpart 1 of Amendment 821—which is the part at issue here in Mr. Ashford's case—the Sentencing Commission created a brand new guideline: USSG § 4C1.1 in Chapter Four of the *Guidelines Manual*, in which it instituted a decrease of two offense levels for "Zero-Point Offenders" (i.e., offenders with no criminal history points) whose offense did not involve certain aggravating factors. To receive this two-level adjustment, a zero-point offender must "meet[] all of the following criteria":

> (1) the defendant did not receive any criminal history points from Chapter Four, Part A;
>
> (2) the defendant did not receive an adjustment under § 3A1.4 (Terrorism);
>
> (3) the defendant did not use violence or credible threats of violence in connection with the offense;
>
> (4) the offense did not result in death or serious bodily injury;
>
> (5) the instant offense of conviction is not a sex offense;
>
> (6) the defendant did not personally cause substantial financial hardship;
>
> (7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (8) the instant offense of conviction is not covered by § 2H1.1 (Offenses Involving Individual Rights);
>
> (9) the defendant did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense); and

6

(10) the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. 848;

decrease the offense level determined under Chapters Two and Three by 2 levels.

U.S. Sent'g Guidelines Manual § 4C1.1(a).

In moving for a sentence reduction under Part B of Amendment 821, FDSET "now asks this Court to resolve the objection previously raised[]" and "find [Mr. Ashford] eligible for a reduction as a 'zero point' offender." [Def.'s Mot. at 1]. In response, the United States asserts that FDSET "identifies no legal authority for the proposition that the Court may" resolve the objection in Mr. Ashford's favor here in a post-sentencing context. [United States's Resp. at 5]. FDSET, though, does cite a pair of cases in support of Mr. Ashford's cause: *United States v. Valentine*, 694 F.3d 665 (6th Cir. 2012) and *United States v. Moore*, 582 F.3d 641 (6th Cir. 2009). These cases are instructive.

In *Moore*, the defendant, who had pleaded guilty to distributing crack cocaine under 21 U.S.C. § 841(a)(1), argued that the district court erred when it denied his motion for a sentence reduction under Amendment 706. 582 F.3d at 644. By way of background, the Sentencing Commission enacted Amendment 706 in 2007, and before its enactment, a district court could impose the highest base-offense level under the Sentencing Guidelines if the defendant was responsible for a quantity of crack equal to 1.5 kilograms or more. *United States v. Valentine*, 694 F.3d 665, 669 (6th Cir. 2012). Amendment 706 increased the threshold quantity to 4.5 kilograms. *Id.*

In pursuing a reduction before the district court, the defendant in *Moore* had contended that the PSR did not expressly state that he was responsible for more than 4.5 kilograms of crack. *Moore*, 582 F.3d at 644. The district court rejected his contention because he had "raised

7

no factual or legal objection to the" PSR and his "collateral challenge to the amount of drugs stated in the [PSR] almost 8 years after the fact[] is too late." *Id.* The Sixth Circuit held that the district court erred in denying his motion because "[t]he PSR did not specifically link [the defendant] to 4.5 kilograms of crack" and the defendant "never admitted to any facts beyond those in the PSR." *Id.* at 645. Noting that the district court "never considered [the defendant's] argument that the facts in the PSR do not support holding him responsible for 4.5 kilograms of crack," the Sixth Circuit remanded the case, "not because the district court must apply the reduction, but because no factual finding definitively linked [the defendant] with 4.5 kilograms of cocaine base." *Id.* at 646.

Although a defendant is bound to factual allegations in the PSR to which he does not object, *United States v. Adkins*, 429 F.3d 631, 632–33 (6th Cir. 2009)—and in Mr. Ashford's case, he withdrew his objection to the assessment of a criminal history point for driving with a suspended license—the defendant's failure to object to the drug quantity in *Moore* did not foreclose relief under Amendment 706 because the record was inconclusive as to the drug quantity, *see Valentine*, 694 F.3d at 671 ("In *Moore*, the defendant's failure to object to his PSR had no bearing on whether [the district] court could consider the original record when ruling on the modification motion. We remanded the case precisely because [the district] court had not made a specific finding of whether defendant was responsible for more than 4.5 kilograms."); *United States v. Gale*, 468 F.3d 929, 940 (6th Cir. 2006) ("When, on appeal, a defendant's argument and supporting evidence presents an arguably meritorious claim for a lesser sentence, but there is little to suggest that the district court actually considered it, then remand may be appropriate." (citation omitted)); *but see United States v. Blackmon*, 380 F. App'x 498, 501 (6th Cir. 2010) (ruling that *Moore* did not entitle the defendant to a reduction

8

under Amendment 706 because he failed to object to the PSR's factual allegations stating that he "stipulated to and admitted *specific* facts showing that his crime involved at least 4.5 kilograms of crack cocaine" (emphasis added)).

Under *Moore*, Mr. Ashford's withdrawal of his objection at sentencing does not prevent this Court from now ruling on the objection, the resolution of which could establish that Mr. Ashford has a cognizable claim for a lesser sentence under Amendment 821. Indeed, the Court never specifically found that his conviction for driving with a suspended license resulted in a custodial or a probationary sentence of any length, and the Probation Office, in its addendum to the PSR, stated that its investigation into the matter was inconclusive, [PSR Addendum at 1]— and this statement essentially rendered the PSR itself inconclusive, *see Moore*, 583 F.3d at 645 ("The PSR did not specifically link [the defendant] to 4.5 kilograms of crack," and "the district court at sentencing did not adopt any more specific factual findings regarding the quantity of crack [the defendant] distributed."). The Court, therefore, can and will take up Mr. Ashford's objection.

When addressing whether a retroactive amendment lowers a defendant's sentence, the Court considers only "the record that was available to" it at sentencing, and that "record will include the trial transcript, the sentencing hearing transcript, and the portions of the presentence report that the defendant admitted to or the sentencing court adopted." *Valentine*, 694 F.3d at 670 (citations omitted). At sentencing, the United States carried the burden of proving by a preponderance of evidence that the assessed criminal history point under USSG § 4A1.2(c)(1) applies to Mr. Ashford. *See United States v. Priester*, 506 F. App'x 416, 422 (6th Cir. 2012) ("The burden was on the government to prove the facts supporting the additional criminal history points." (citing *United States v. Darwich*, 337 F.3d 645, 665 (6th Cir. 2003))). FDSET argues that

9

the United States fails to meet its burden because the Probation Office "could not determine from the state court records whether the 45 days credit was in fact credit for time served, or it was suspended in lieu of some other penalty, i.e., fines or community service." [Def.'s Mot. at 7 (internal quotation marks omitted) (quoting PSR Addendum at 1))]. According to FDSET, the evidence is therefore "in equipoise" and the United States cannot show, by a preponderance of the evidence, that Mr. Ashford's conviction for driving with a suspended license resulted in a term of imprisonment of at least thirty days. [*Id.* at 8]; *see* USSG § 4A1.2(c)(1) (stating that a prior offense of driving with a suspended license counts towards a defendant's criminal history score only if it resulted in a term of imprisonment of at least thirty days).

FDSET is correct. The evidence is inconclusive as to whether Mr. Ashford's conviction for driving with a suspended license resulted in a custodial or probationary sentence, and the United States therefore fails to meet its burden of showing that it is a countable prior sentence under USSG § 4A1.1. *Cf. Kettering v. Diamond-Triumph Auto Glass, Inc.*, 24 F. App'x 352, 357 (6th Cir. 2001) ("[T]his evidence is inconclusive and is insufficient to meet the preponderance of evidence standard."). FDSET's objection is sustained, and the single criminal history point for this prior conviction does not apply to Mr. Ashford. Without this criminal history point, he is a zero-point offender who qualifies for a sentence reduction under Amendment 821. *See* [United States's Resp. at 4 ("[T]he United States agrees that Ashford has satisfied the other criteria in U.S.S.G. § 4C1.1(a).")]. Amendment 821 decreases Mr. Ashford's total offense level from twenty-five to twenty-three. *See* USSG § 4C1.1(a) ("If the defendant meets all of the following criteria . . . . decrease the offense level determined under Chapters Two and Three by 2 levels."). A total offense level of twenty-three and a criminal history category of I results in an amended guidelines range of forty-six to fifty-seven months. Mr. Ashford was therefore

10

Case 2:20-cr-00088-JRG-CRW   Document 59   Filed 03/20/25   Page 10 of 16
PageID #: 369

sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission.

To be entitled to relief under § 3582(c)(2), however, Mr. Ashford must vault one more hurdle: § 3553(a)'s factors. *See United States v. Hughes*, 584 U.S. 675, 689 (2018) ("Even if a defendant is eligible for relief, before a district court grants a reduction it *must* consider 'the factors set forth in section 3553(a) to the extent that they are applicable[.]'" (emphasis added) (quoting 18 U.S.C. § 3582(c)(2))). The Court considered § 3553(a)'s factors "in some depth at the original sentencing," *Curry*, 606 F.3d at 331, so it has no obligation to readdress each of them now, *see* 18 U.S.C. § 3582(c)(1)(A) (requiring district courts to consider § 3553(a)'s factors "to the extent that they are applicable"); *United States v. Jones*, 407 F. App'x 22, 25 (6th Cir. 2011) (stating that in *Curry* "we held that the district court did not abuse its discretion even though it had not expressly considered all of the § 3553(a) factors" because "§ 3582(c)(2) proceedings 'do not constitute a full resentencing of the defendant' and do not require the same procedural formalities as plenary sentencings" (quoting *Curry*, 606 F.3d at 330–31)). "[A]s long as the record *as a whole* demonstrates that the pertinent factors were taken into account," the Court's analysis will be complete and adequate. *Curry*, 606 F.3d at 330–31 (emphasis added) (internal quotation marks and quotation omitted)).

In Mr. Ashford's case, the factors that the Court will address include § 3553(a)(1), (2), and (4):

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and

11

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> . . . .
>
> (4) the kinds of sentence and the sentencing range established for—
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

18 U.S.C. § 3553(a)(1)–(2), (4). Mr. Ashford's criminal offense—i.e., possessing with the intent to distribute 280 grams or more of a mixture or substance containing cocaine base (crack)—is unquestionably serious in nature, and so are the circumstances of his offense. *See United States v. Dilg*, 726 F. App'x 368, 371 (6th Cir. 2018) ("We have categorically labeled drug offenses as serious." (citing *United States v Moss*, 217 F.3d 426, 431 (6th Cir. 2000))); *United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) ("[D]rug trafficking is a serious offense[.]" (citations omitted)); *cf. United States v. Suber*, 75 F. App'x 442, 444 (6th Cir. 2003) (describing a conspiracy to distribute heroin as "grave"). Mr. Ashford admitted that he was responsible for possessing with the intent to distribute 372.78 grams of crack, [Plea Agreement at 4]—which is a large amount of drugs. *See, e.g.*, *United States v. Castro*, 960 F.3d 857, 865 (6th Cir. 2020) (stating that a hundred grams of heroin is a "large quantit[y] of drugs"); *cf. United States v. Farmer*, No. 95-6637, 1996 WL 694147, at *4 (6th Cir. Dec. 3, 1996) (describing 150 grams of cocaine base as "a large quantity of narcotics").

In addition, Mr. Ashford received a favorable outcome at sentencing. *See United States v. Garfias*, No. 5:19-080-DCR, 2024 WL 457763, at *2 (E.D. Ky. Feb. 6, 2024) (recognizing that the defendant received a favorable outcome at sentencing and declining to grant him a reduction under Amendment 821 because "any further reduction . . . would unduly diminish the seriousness of his offenses"). The Court had the discretion to sentence him at the top of the

guidelines range—seventy-one months—or higher. Instead, it sentenced him to a guidelines-range sentence near the low end of his guidelines range. Also, he received leniency from the United States, which could have charged him with possessing with the intent to distribute forty grams or more of a mixture or substance containing a detectable amount of fentanyl. *See* [Plea Agreement at 4 (stating that the officers recovered 89.99 grams of a mixture or substance containing heroin and fentanyl from the car in which Mr. Ashford was a passenger)]; *see also* [United States's Resp. at 7 (pointing out that Mr. Ashford "was only being held responsible for the crack cocaine mixture, not the fentanyl/heroin mixture also found in the car")]. That charge, in the Court's eyes, would have been gravely serious, *see* [Sent'g Hr'g Tr. at 25:7–9 ("The Court: Do you have an understanding of how dangerous fentanyl is, especially when it's mixed with something else?")], and it would have carried a five-year mandatory minimum sentence and could have, in the Court's discretion, resulted in a sentence as high as forty years, 21 U.S.C. § 841(b)(1)(B).[3]

FDSET, in moving for a sentence reduction, does not acknowledge the seriousness of Mr. Ashford's offense or the leniency that he received at sentencing. In fact, it barely touches on § 3553(a)'s factors. In addressing one factor, namely § 3553(a)(6), which requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), FDSET argues that Mr. Ashford's sixty-month sentence is "three months above the retroactively applicable range" and "is unlike the vast majority of sentences imposed in cases like this." [Def.'s Mot. at

---

[3] FDSET, in its reply brief, argues "the same guidelines range . . . would apply if the fentanyl had been counted" and that, therefore, "any suggestion by the government that Mr. Ashford was treated leniently" is fallacious. [Def.'s Reply at 7]. But with this argument, FDSET ignores the five-year mandatory minimum sentence that would have accompanied a charge of possessing with the intent to distribute forty grams or more of a mixture or substance containing a detectable amount of fentanyl.

13

Case 2:20-cr-00088-JRG-CRW   Document 59   Filed 03/20/25   Page 13 of 16
PageID #: 372

9]. To support this argument, FDSET cites a study in which "83 percent of those convicted of trafficking in crack with offense level 23 and in [criminal history category] I were sentenced either within the applicable range of 46 to 57 months (34 percent) or below the applicable range (49 percent), with an average sentence of 38 months." [*Id.*].

FDSET's argument under § 3553(a)(6) is ineffective. Although FDSET correctly relies on national sentencing disparities as the premise for its argument, *see United States v. Houston*, 529 F.3d 743, 752 (6th Cir. 2008) ("Subsection 3553(a) is concerned with national disparities among the many defendants with similar criminal backgrounds convicted of similar criminal conduct." (quotation omitted)), "[not] all sentencing disparities can be eliminated," and "[t]he objective of the guidelines 'is to avoid *unwarranted* sentencing disparities," *McCleskey v. Kemp*, 481 U.S. 279, 312 n.35 (1987) (quotation omitted). The Court cannot agree that the three-month disparity from the top end of the retroactively applicable guidelines range is an *unwarranted* one. The Court fully explained its reason for sentencing Mr. Ashford to a sixty-month sentence:

> I'm going to sentence just a little bit above the bottom of the guideline range for a very simple reason, and that is that this offense involved fentanyl and heroin, and you are not otherwise held accountable for those because your guideline range was based on the quantity of crack cocaine.

[Sent'g Hr'g Tr. at 40:6–12]. In the study that FDSET cites to the Court, FDSET states that the subjects of the study were defendants "convicted of trafficking in crack," and this statement, by itself, gives the Court no reason to believe that these defendants were trafficking fentanyl in addition to crack.

And the fact that Mr. Ashford was trafficking not only crack but also fentanyl matters because of "the individualized nature of sentencing," *United States v. Axline*, 93 F.4th 1002, 1013 (6th Cir. 2024) (citation omitted), which requires the Court to compare apples to apples,

14

*see United States v. Mateo-Espejo*, 426 F.3d 508, 514 (1st Cir. 2005) ("A well founded claim of [unwarranted] disparity . . . assumes that apples are being compared to apples."). "Evaluating alleged sentencing disparities among similarly-situated defendants requires considering 'more than the crime of conviction and the total length of the sentences,'" *United States v. Marmol*, No. 24-11992, 2025 WL 262308, at *6 (11th Cir. Jan. 22, 2025) (quoting *United States v. Azmat*, 805 F.3d 1018, 1048 (11th Cir. 2015)), because "[t]he underlying facts of the crime and *all of the individual characteristics* are relevant," *Azmat*, 805 F.3d at 1048 (emphasis added). Yet FDSET, in invoking the study that it cites to the Court, does nothing more than claim that a disparity exists between the subjects' crimes of conviction and sentences and Mr. Ashford's crime of conviction and sentence, and FDSET therefore fails to convince the Court that an *unwarranted* sentencing disparity exists between them.

Lastly, FDSET contends that Mr. Ashford's post-sentencing conduct justifies a sentence reduction because he "has been sanctioned just once . . . for having an unauthorized item" and "has completed nearly 100 hours of programming." [Def.'s Mot. at 9]; *see United States v. Allen*, 956 F.3d 355, 358 (6th Cir. 2020) ("[C]ourts may consider post-sentencing conduct in assessing the § 3553(a) factors when considering whether to adjust a previously imposed sentence." (citing *Pepper v. United States*, 562 U.S. 476, 487–93 (2011))); USSG § 1B1.10 cmt. n.1(B)(iii) (providing that courts "may consider post-sentencing conduct of the defendant"). To the extent that a single sanction constitutes good behavior, "that behavior is expected of federal prisoners," *United States v. Hymes*, 19 F.4th 928, 934 (6th Cir. 2021), and in the absence of a meaningful analysis of § 3553(a)'s factors—which, again, FDSET does not put forward—Mr. Ashford's claim of good behavior does not resonate with the Court.

15

In sum, FDSET fails to demonstrate that § 3553(a)'s factors warrant a reduction in Mr. Ashford's sentence. *See McClain*, 691 F.3d at 777 (stating that the defendant "must show" that he is entitled to a sentence reduction under § 3582(c)(2)). Because of the gravity of his offense, the nature and circumstances of his offense, and the favorable outcome that he received at sentencing, a reduction in his sentence simply would not reflect the seriousness of his offense and conduct, promote respect for the law, or provide just punishment, nor would it afford adequate deterrence or protect the public from future crimes. Section 3553(a)'s factors therefore militate against a reduction in his sentence, and he is not entitled to relief under § 3582(c)(2) and Amendment 821.

### IV. CONCLUSION

FDSET fails to demonstrate that Mr. Ashford is entitled to a sentence reduction under § 3582(c)(2) and Amendment 821, and his Motion for Sentence Reduction under Guideline Amendment 821, Part B [Doc. 54] is therefore **DENIED**. The United States's Motion for Extension of Time to File Response [Doc. 56] is **GRANTED** *nunc pro tunc*.

So ordered.

ENTER:

s/J. RONNIE GREER<br>
UNITED STATES DISTRICT JUDGE